IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2011 Session

## STATE OF TENNESSEE v. MICHAEL LEWIS

**Appeal from the Circuit Court for Bledsoe County**
**No. 51-2007     Buddy Perry, Judge**

_____

**No.  E2010-02294-CCA-R3-CD - Filed October 17, 2011**

_____

Appellant, Michael Lewis, was indicted by the Bledsoe County Grand Jury for child abuse. Appellant waived his right to counsel and represented himself at trial.  He was convicted and sentenced to three years in incarceration.  Appellant filed a motion for new trial, which was granted by the trial court.  The State filed an application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 9 and an application for stay.  This Court granted the appeal and found that the trial court improperly granted the new trial, reinstating Appellant's convictions and sentence. *State v. Michael Lewis*, No. E2008-02141-CCA-R9-CD, 2009 WL 4017158 (Tenn. Crim. App., at Knoxville, Nov. 20, 2009).  On remand, the trial court denied the motion for new trial.  Appellant appeals to this Court, seeking resolution of the following issues: (1) whether the indictment was valid; (2) whether the verdict form was invalid; (3) whether the trial court improperly instructed the jury; (4) whether the trial court improperly allowed testimony from Tonya Hickman and Rhonda Sills about statements made by the victim; (5) whether the trial court improperly excluded the testimony of Appellant's children at the sentencing hearing; and (6) whether the trial court improperly sentenced Appellant.  After a review of the record, we determine that Appellant is not entitled to relief with respect to issues 1-5.  However, we determine that the trial court improperly ordered Appellant to serve his sentence consecutively to a sentence for civil contempt.  Accordingly, the matter is remanded to the trial court for entry of a corrected judgment to reflect that Appellant's sentence is to be served concurrently to his sentence for civil contempt.  In all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed;**
**Reversed in Part and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Keith H. Grant, Chattanooga, Tennessee, for the appellant, Michael Lewis.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; J. Michael Taylor, District Attorney General; and James W. Pope, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In July of 2007, Appellant was indicted for one count of child abuse, for an incident that took place in December of 2006, involving Appellant's son, who was six years old at the time.[1] Appellant waived his right to an attorney and chose to represent himself at trial. The trial court appointed someone from the Public Defender's Office as elbow counsel.

At trial, Tonya Hickman, the mother of the victim, testified. The victim was born on May 30, 2000. Ms. Hickman described the victim as hyperactive and stated that he took medication for ADHD.

Ms. Hickman had primary custody of the victim, and Appellant had weekend visitation rights. On Friday, December 15, 2006, Ms. Hickman took the victim to JJ's Market at 5:00 p.m. to meet Appellant for regularly scheduled weekend visitation. She was scheduled to pick the victim up at the same location at 5:00 p.m. on Sunday, December 17, 2006.

Sometime that weekend, Ms. Hickman received a call from Appellant's girlfriend, Renee Richardson. Ms. Richardson wanted to know if the victim could stay with Appellant for a few more days. Ms. Hickman denied that request.

When Ms. Hickman went to pick up the victim on Sunday, Appellant was about thirty to forty-five minutes late. The victim got out of the car, walking with his head down. Ms. Hickman asked the victim if he had gotten a "whipping" from his father. The victim told his mother that he had gotten a whipping because he lied to Appellant about breaking a window in the truck or a latch on the truck. At that time, the victim pulled up his shirt exposing "long red whelps" on the "lower middle part" of his back. Some of the marks "wrapped around [the victim's] arms." Ms. Hickman also noticed "whelps" on the victim's chest, bottom, arms, and legs that were "deep in the skin." The victim also had a knot on his head.

---

[1]It is the policy of this Court not to identify minor victims of child abuse.

Ms. Hickman drove the victim directly to the jail and met with Tammy Seals. Ms. Hickman was concerned about the victim's safety. Appellant had made threats to Ms. Hickman and her family in the past. Ms. Hickman had even taken out an order of protection against Appellant at one time when he threatened to kill her. After going to the jail, Ms. Hickman took the victim to the hospital where the victim was treated and released. While at the hospital, the victim was given medication for pain.

The following day, Ms. Hickman swore out a warrant against Appellant, and photographs were taken of the victim's injuries.

The victim testified at trial. The victim recalled that he spent the weekend with his father and his father's two other children. The victim had a conversation with Appellant sometime that weekend about lying. The children were playing in the car when a part of the window broke. Appellant found out about the window, picked the victim up by his hair, and whipped him with a switch. The victim testified that it hurt when Appellant whipped him and that he cried and had marks on his legs and bottom. The victim thought that he had all of his clothes on during the whipping.

According to the victim, Appellant explained that the whipping was for "everything" that he had done that weekend. The victim admitted that prior to the window being broken, he had kicked one of the other children in the face with his boots. Appellant had also already told the victim not to lie anymore. The victim maintained that he did not lie about breaking the window. He claimed that one of the other children broke the window.

Tammy Seals, the jailer at the Bledsoe County Jail, testified that Ms. Hickman brought the victim in to the jail on December 17, 2006. At the time, Ms. Seals observed red, obvious welts on his lower back and buttocks. As a result of what she saw, Ms. Seals sent Ms. Hickman and the victim to the emergency room. Ms. Seals said that the photographs did not adequately portray the severity of the welts.

The victim was examined by Sharon Holiday, a nurse at the emergency room at Erlanger Hospital in Bledsoe County. The victim informed Ms. Holiday that he was whipped with a switch by his father. Ms. Holiday described the welts on the victim as raised and red. Ms. Holiday observed marks that went down almost to the victim's ankles. Ms. Holiday called Child Protective Services as a result of the injuries.

Ms. Holiday explained that the injuries appeared much worse in person than in the pictures taken by the police. Her opinion was corroborated by the testimony of Larry Billingsley, a paramedic who was working triage in the emergency room when the victim arrived.

Rhonda Sills, a youth services officer, saw the victim on December 17, 2006. According to Ms. Sills, the victim had welts "crisscrossed all down his back" in addition to marks on his legs, arms, and chest. Ms. Sills did not observe marks on the victims face or head but was told by the victim that "his daddy lifted him up by the hair of the head, but he didn't have any marks on his face or head." Ms. Sills also thought the injuries were more visible in person than in the photographs. Additionally, she testified that she believed the victim's allegations that his father had whipped him after telling a lie.

Lashelle Worley, a worker for the Department of Children's Services, observed the victim's injuries on the day he was brought into the hospital. The victim had over 100 scratch or switch marks that extended from beneath his shoulder blades down to his ankles. A majority of the marks were two or three inches long. The marks were "deep" and the victim looked like he "had been rolled within a briar patch." Ms. Worley was of the opinion that the marks were less visible in the photographs.

When Ms. Worley spoke to Appellant, he admitted causing the injuries. Appellant claimed that he did not want his "children to be around him" if he could not "discipline" them.

The allegations of child abuse were investigated by Investigator Ricky Seals of the Bledsoe County Sheriff's Department. Photographs were taken of the injuries on December 17 by Investigator Seals who described the wounds as being more "intense" than they appeared in the photographs.

Appellant testified that he picked the victim up on the weekend of December 15, 2007. On Saturday, December 16, 2007, he and his children were at McDonald's when he noticed the latch on his truck window was broken. Appellant knew that the children had been playing in the truck, so he asked them about the window. The children denied breaking the window. Appellant testified that he talked to the children about lying. The siblings denied breaking the window. Appellant maintained that the victim was lying and the other children were not lying.

Appellant also testified that the victim hit one of his siblings in the face with his boots on Sunday. Appellant placed the victim in time out.

Later that evening, the victim's mother called Appellant about the victim staying longer. Appellant thought that his girlfriend had called the mother to see if the child could stay longer. At some point during the conversation, the mother told Appellant that the victim lied all the time. After the telephone conversation, the victim eventually told Appellant that he and a sibling broke the window.

Appellant was mad at the victim and wanted to teach him that his behavior was wrong. Appellant admittedly pulled down the victim's pants and whipped him with a switch "about 20 times" as the victim tried to get away. Appellant claimed that the victim was also wearing a shirt and a jacket, which were not removed. Appellant denied picking the victim up by his hair. At the time of the offense, Appellant was approximately 235 to 240 pounds. The victim was six years old, less than four feet tall, and weighed less than 100 pounds. Appellant whipped the victim to "teach him right from wrong" because he had "learned to manipulate and lie to people." Appellant's intent "wasn't to jerk [his] kid up and wear him out with a stick and make him have whelps [sic] and bleed, [his] intentions were to teach him that it's wrong to lie, it's wrong to lie and manipulate other people." Appellant insisted that it was better for the victim to have a few "whelps" rather than go his whole life "thinking it's okay to lie to people." Appellant thought that the whipping worked because the victim had not lied since the incident. In fact, Appellant claimed that he would "do it again" if given the chance, in order to impart a good influence on his son.

Appellant was convicted and sentenced to three years in incarceration. A motion for new trial was granted by the trial court. The State filed an application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 9 and an application for stay. This Court granted the appeal and found that the trial court improperly granted the new trial, reinstating Appellant's convictions and sentence. *State v. Michael Lewis*, No. E2008-02141-CCA-R9-CD, 2009 WL 4017158 (Tenn. Crim. App., at Knoxville, Nov. 20, 2009). On remand, the trial court denied the motion for new trial. On appeal to this Court, Appellant seeks resolution of the following issues: (1) whether the indictment was valid; (2) whether the verdict form was valid; (3) whether the trial court improperly instructed the jury; (4) whether the trial court improperly allowed testimony from Tonya Hickman and Rhonda Sills about statements made by the victim; (5) whether the trial court improperly excluded the testimony of Appellant's children at the sentencing hearing; and (6) whether the trial court improperly sentenced Appellant.

*Analysis*
*Validity of the Indictment*

Initially, Appellant complains that the indictment "combined sections (a) and (b) of T.C.A. § 39-15-401" and effectively denied Appellant a unanimous verdict. Specifically, Appellant complains that the addition of the words "so as to adversely affect the health and welfare of said child" effectively made it impossible for the jury to determine whether Appellant "inflicted injury" or "adversely affected the health and welfare" of the child. The State contends that Appellant waived the issue for failure to raise it pretrial and, in any event, that the indictment was sufficient.

Ordinarily, defenses and objections based upon defects in an indictment must be raised prior to trial or they are waived, unless they relate to the court's lack of subject matter jurisdiction or to the failure of the indictment to charge an offense. *See, e.g.*, Tenn. R. Crim. P. 12(b)(2), (f); *State v. Wyatt*, 24 S.W.3d 319, 322 (Tenn. 2000) *State v. Nixon*, 977 S.W.2d 119, 120–23 (Tenn. Crim. App. 1997). The particular indictment defect raised by this defendant is of neither sort. Further, it is undisputed that Appellant herein failed to object to the indictment prior to trial. Moreover, Appellant failed to cite to any authority to support his claim. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Appellant failed to object to the indictment prior to trial and has failed to cite any authority in his brief to support his argument. Therefore this issue is waived.

*Verdict Form*

Next, Appellant complains that the trial court used an erroneous verdict form. Specifically, Appellant complains that the verdict form was "unclear" because there was "only one place to fill in guilty or not guilty, and such spot was under Count I." Appellant argues that this did not give the jury the option of finding Appellant not guilty on Count I but guilty on a lesser included offense. Appellant also argues that the form was improperly filled out by the jury. The State disagrees with Appellant, arguing that Appellant has waived the issue for failure to object at the time of the verdict.

Again, Appellant has waived consideration of this issue on appeal by failing to contemporaneously object to the form of the verdict upon its return by the jury. Tenn. R. App. P. 36(a); *State v. Jason White*, No. W2003-02558-CCA-R3-CD, 2005 WL 729167, at *7 (Tenn. Crim. App., at Knoxville, Mar. 30, 2005), *perm. app. denied*, (Tenn. Oct. 10, 2005) (determining defendant waived any issue with verdict form for failing to object at the time of the verdict).

Moreover, the verdict form herein is clear. The trial court instructed the jury that Appellant was "charged in the indictment with the offense of abuse of a child under age six, which caused injury." The trial court explained that the indictment included the lesser included offenses of child abuse and simple assault. The trial court instructed the jury on the elements of the charged offense as well as the lesser included offenses. Further, the trial

court instructed the jury to consider the charged offense first, then to proceed to the lesser included offenses in order. The verdict form provided to the jury listed the charged offense with a blank for the jury to write guilty or not guilty. The jury wrote in guilty under the charged offense. Finally, the trial court clarified the jury's verdict. After receiving the verdict form, the trial court stated, "I can guess by what you've done, but I need to make sure that you confirm it." The trial court then read the following from the verdict form, "We, the jury, find the defendant guilty." The trial court stated that "obviously, [the jury] picked the first offense, which is child abuse of a child age six or less with injury" but confirmed the verdict by asking the jury to indicate whether the verdict was unanimous by a show of hands. Appellant is not entitled to relief on this issue.

*Jury Instructions*

Appellant next argues that the trial court erred in instructing the jury on the definitions of "intentionally, knowingly, recklessly, and bodily injury." Specifically, Appellant complains that the trial court modified the definition of "knowingly" and left out parts of the definitions of "recklessly" and "bodily injury." The State concedes that the trial court erroneously instructed the jury on the definition of "knowingly," but argues that the error was harmless because it placed a higher burden of proof on the State. With regard to the remaining instructions, the State insists that Appellant has failed to establish error on the part of the trial court.

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

At the conclusion of the proof, the trial court instructed the jury that Appellant was charged with the offense of "child abuse of a child under age six, which caused injury." The trial court listed the applicable lesser included offenses and instructed the jury on the elements of each offense. Then the trial court defined a few of the terms as follows:

"Intentionally" means that a person acts intentionally with respect to a result of the conduct when it is the person's conscious objective or desire to cause the result.

"Knowingly" means that a person acts knowingly with respect to a result of the conduct when the person is aware that the [conduct] is reasonably certain to cause the result.

"Reckless" means that a person acts recklessly with respect to the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur.

The requirement of recklessly is established if it's shown that the defendant acted knowingly or intentionally.

"Bodily injury" includes a cut, an abrasion, a bruise, burn, or any type [of] disfigurement.

The State correctly notes that in *State v. Ducker*, 27 S.W.3d 889, 896-97 (Tenn. 2000), our state supreme court held that in child abuse prosecutions under Tennessee Code Annotated Sections 39-15-401, -402, the mens rea of "knowing" refers only to the "treatment" of a child, and that the State need not prove that the defendant knew his conduct would result in bodily or serious bodily injury, only that the defendant is "aware of the nature of the conduct." T.C.A. § 39-11-302. In other words, the State does not have to prove that the defendant "intended to cause injury to the child." *State v. Toliver*, 117 S.W.3d 216, 230 (Tenn. 2003). The defendant must "'know' that his treatment of the child is abusive, even if it need not be proven that he 'know' that his conduct will result in bodily injury or serious bodily injury." *State v. Prater*, 137 S.W.3d 25, 33 (Tenn. Crim. App. 2003) (quoting *State v. Russell Maze*, No. M2000-02249-CCA-R3-CD, 2002 WL 1885118, at *5 (Tenn. Crim. App., at Nashville, Aug. 16, 2002)).

In the case herein, the trial court clearly utilized an improper instruction for the definition of the word "knowingly." Erroneous jury instructions require a reversal, unless the error is harmless beyond a reasonable doubt. *See Welch v. State*, 836 S.W.2d 586, 590 (Tenn. Crim. App. 1992). By instructing the jury that the State had to establish that the defendant knowingly injured the victim, the trial court effectively raised the State's burden. Moreover, Appellant did not deny whipping the child. In fact, he argued that the whipping was justified. Thus, the error in the jury instructions was harmless.

Appellant also argues that the trial court left out parts of the definitions of "recklessly" and "bodily injury." Appellant fails to note what portions of the definitions were left out. As stated above, Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Appellant fails to cite any authority to support his argument. Moreover, Appellant failed to object to the instructions at trial. This Court has no obligation to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Therefore this issue is waived.

*Witness Testimony*

Next, Appellant complains that the trial court erred in allowing Tonya Hickman and Rhonda Sills to testify at trial on matters that were "hearsay and speculation" in addition to "hearsay statements the child victim allegedly made to them." The State responds by urging this Court to determine that Appellant waived the issue for failure to object to the testimony at trial. The State also argues that Appellant is not entitled to relief because Appellant failed to identify specific statements made by Ms. Hickman that were objectionable and the statements made to Ms. Sills were not hearsay.

Appellant failed to object at trial to the statements he now complains of on appeal. As stated above, this Court has no obligation to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Moreover, Appellant does not specifically identify what statements made by Ms. Hickman were hearsay. Appellant also failed to cite authority for his arguments. Again, Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Finally, Appellant actually elicited some of the alleged hearsay statements from Ms. Sills during cross-examination. He cannot now "take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct." *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952). Therefore this issue is waived.

*Sentencing*

Lastly, Appellant raises several claims with regard to his sentence. Specifically, Appellant insists that the trial court erred by refusing to allow Appellant to call his children to testify at the sentencing hearing. Further, Appellant argues that the trial court erred in determining the length of his sentence, in denying an alternative sentence, and in imposing consecutive sentencing. The State counters that the length of Appellant's sentence was appropriate but concedes that the trial court erred in imposing a consecutive sentence "based solely on the fact that the prior sentence is civil in nature."

*A. Witnesses at Sentencing Hearing*

We will first address Appellant's argument that the trial court erred by refusing to allow him to call his children to testify at the sentencing hearing. Appellant has waived this issue for failure to support his argument with citation to authorities or argument. Tenn. R. Crim. App. 10(b). Further, Appellant failed to establish that he actually subpoenaed his children to testify and/or what their testimony would have been at the sentencing hearing. This issue is waived.

*B. Sentence*

With regard to Appellant's actual sentence, we recall that "[w]hen reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40–35–401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered

by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c). However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence. *Carter*, 254 S.W.3d at 345. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

"The amended statute no longer imposes a presumptive sentence." *Carter*, 254 S.W.3d at 343. As a result of the amendments to the Sentencing Act, our appellate review of the weighing of the enhancement and mitigating factors was deleted when the factors became advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* at 344. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* The trial court's weighing of various mitigating and enhancement factors is now left to the trial court's sound discretion. *Id.*

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492

(Tenn. 2001). If our review reflects that "the trial court appl[ied] inappropriate mitigating and/or enhancement factors or otherwise fail[ed] to follow the Sentencing Act, the presumption of correctness fails" and our review is de novo. *Carter*, 254 S.W.3d at 345.

At the outset we note that Appellant committed the criminal offenses at issue in December of 2006, therefore, the 2005 amendments to the sentencing act apply to our review of his sentencing. The 2005 amendments to the sentencing act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[T]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, 254 S.W.3d at 344.

At the conclusion of the hearing herein, the trial court explained that three enhancement factors applied: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;" (4) that "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability;" and (14) that the defendant abused a position of private trust. T.C.A. § 40-35-114(1), (4), (14). The State concedes that the trial court erroneously considered factor (4), relating to the victim's age. We agree, without a showing of particular vulnerability, the victim's age alone does not support the application of this factor. The State did not present evidence that the victim's attention deficit disorder made him particularly vulnerable, as required for the application of this enhancement factor. *See State v. Ray Charles Gasaway*, No. 01C01-9703-CR-00101, 1998 WL 131536, at *3, n.6 (Tenn. Crim. App. at Nashville, Mar. 24, 1998), *perm. app. denied*, (Tenn. Nov. 6, 1998). Despite the erroneous application of this enhancement factor, the remaining factors support the sentence imposed. *See State v. Banks*, 271 S.W.3d 90, 147 (Tenn. 2008) (upholding sentence where two enhancement factors were applied to reach defendant's sentence).

It is clear that as the victim's father Appellant was in a position of trust in his care of the victim at least when involved in a visitation. Moreover, the testimony of Ms. Gentry about repeated beatings, and of both Ms. Gentry and Ms. Hickman of Appellant's failure to pay child support which is a crime establish a history of criminal behavior. See, Tenn. Code Ann. § 39-15-101 (providing that nonsupport of a minor child is a crime).

After a review of the transcript from the sentencing hearing, it is clear that the trial court also considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, his lack of remorse for his conduct and the principles

of sentencing prior to sentencing Appellant to three years in confinement, a one year increase from the minimum Class D felony sentence for a standard offender. *See id.* at 345-46. Under these circumstances the record supports Appellant's sentence.

### C. Alternative Sentencing

Appellant complains that the trial court denied alternative sentencing, when he was a "candidate" for an alternative sentence. In fact, Appellant contends that the trial court made no findings on the record regarding an alternative sentence. The State argues that the trial court properly denied alternative sentencing.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders:

> [A]nd who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2006).

All offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

-13-

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

In the case herein, the trial court made the following statements with regard to Appellant's sentence:

I'm going to find that the sentence should be served and I think that that finding is based on the fact that there is a prior history of abuse; that there is prior proof of violent and intimidating conduct towards others and there's a clear unwillingness to comply with court orders in the past.

We conclude that the evidence presented supports the decision of the trial court, and the trial court did not abuse its discretion in ordering Appellant to serve the sentence in confinement. The evidence at the sentencing hearing included testimony from Ms. Hickman and Jacqualina Gentry[2] about Appellant's abusive behavior toward them and their children. Ms. Gentry even testified that she had obtained an order of protection against Appellant, which he ultimately violated. Further, Appellant was in jail at the time of the sentencing hearing for failure to pay child support, exhibiting his unwillingness to comply with court orders. Appellant had also

---

[2]Ms. Gentry is the mother of two of Appellant's children.

been held in contempt on two prior occasions for failing to pay child support. The trial court also commented on the "reprehensible" nature of Appellant's actions, finding it "sad that [Appellant didn't] recognize what [he] did to [the victim]." From the record, it appears that the trial court based its decision on all three subsections of Tennessee Code Annotated section 40-35-103(1). We find no evidence to support the reversal of the trial court's denial of an alternative sentence. Therefore, this issue is without merit.

### D. Consecutive Sentencing

Finally, Appellant argues that the trial court improperly ordered consecutive sentencing. The State concedes the error.

A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

The trial court stated that it was imposing consecutive sentences because of Appellant's "civil" sentence for contempt and the sentences have "to be done in that fashion." We agree with Appellant and the State that the trial court improperly imposed consecutive sentencing based upon the determination that Appellant was sentenced for criminal contempt. From what we can glean from the record, Appellant was serving a sentence for civil contempt for failure to pay child support at the time the trial court sentenced him for the conviction at issue herein. The trial court was not sentencing Appellant with criminal contempt as required by Tennessee Code Annotated section 40-35-115(b) in order to justify consecutive sentencing. Moreover, the trial court did not indicate that any of the other factors justifying a consecutive sentence applied to Appellant. Therefore, the matter is remanded to the trial court for entry of a corrected judgment form to reflect Appellant's sentence be served concurrently with his sentence for contempt.

*Conclusion*

For the foregoing reasons, Appellant's conviction is affirmed. However, the matter is remanded to the trial court for entry of a corrected judgment to reflect that Appellant's sentence is to be served concurrently to his sentence for civil contempt.

_____
JERRY L. SMITH, JUDGE